**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PITTSBURGH LOGISTICS SYSTEMS, )
INC., )
       )
          Plaintiff, )     2:18-cv-1382
       )
          v. )
       )
LASERSHIP, INC., et al., )
       )
          Defendants.

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff, Pittsburgh Logistics Systems, Inc. ("PLS"), brings this suit against Defendants LaserShip, Inc. ("LaserShip") and one of PLS's former employees, Jon Herberger ("Mr. Herberger"). LaserShip hired Mr. Herberger several months after the termination of his employment with PLS. PLS alleges that LaserShip's hiring of Herberger and his continued employment with LaserShip constitute breaches of the Employment and Separation Agreements that Herberger entered into with PLS. PLS also contends that Herberger will inevitably disclose PLS's proprietary and confidential information to LaserShip in his new capacity. On these bases, PLS seeks a preliminary injunction enjoining Herberger from further employment with LaserShip and from disclosing PLS's trade secrets and confidential information (Count I), damages for breach of contract (Count II), damages for violations of the Pennsylvania Uniform Trade Secrets Act (Count III), damages for violations of the federal Defend Trade Secrets Act (Count IV), and damages for tortious interference with contract (Count V). (Compl., ECF No. 1).

-1-

Now before the Court is Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 9). Defendants seek the dismissal of all claims against them in the Complaint. The matter has been fully briefed (ECF Nos. 10, 13, 17, 21), and the Court held Oral Argument on the Motion on March 1, 2019. (ECF No. 32). For the reasons that follow, Defendants' Motion will be GRANTED.

## I. BACKGROUND

### a. Factual Background

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the Complaint as true and construes the Complaint in the light most favorable to the Plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). PLS is a transportation logistics company headquartered in Western Pennsylvania. (Compl., ¶ 5–6). LaserShip, a Delaware corporation with a principal place of business in Northern Virginia, is allegedly a competing business of PLS and provides e-commerce delivery services throughout the Eastern and Midwestern United States. (*Id.* ¶ 8–9).

Jon Herberger was formerly employed as the Chief Information Officer of PLS. (Compl., ¶ 10–11). As a required condition of his offer of employment, Mr. Herberger entered into an Employment Agreement with PLS on April 6, 2015, his first day of employment with PLS. (*Id.*). The Employment Agreement states in relevant part:

> During the term of my employment with the Company and thereafter, I shall not, directly or indirectly, divulge, furnish or make accessible to any other person, business, firm or corporation, or use in any way other than in the ordinary course or for the benefit of the business of the Company any Confidential information, as defined herein, of the Company which I have acquired or become acquainted with or will acquire or become acquainted with as a result of my employment with the Company, whether developed by me, or by others.

(Employment Agreement ¶ 4, ECF No. 1-1).

The Employment Agreement also contained a non-competition clause as follows:

> During the term of my employment with the Company and for a period of one (1) year thereafter, I shall not become an officer or director of, or consultant to or be employed by, or otherwise render services to or on behalf of, a Competing Business. For purposes of this Agreement, the term "Competing Business" shall mean: any person, corporation, partnership, joint venture, association or other entity engaged in the business of: (a) providing transportation management, including outsourced transportation, freight brokerage or logistics services, whether internet based or otherwise, and other such business entities as Company may acquire or create; (b) developing and providing an e-commerce web site for providing logistics services for use by shippers or carriers; (c) providing full-scale export and import services, including transborder logistics, ocean container, breakbulk, and consulting; (d) providing technical publications and services; or (e) offering or attempting to offer any service, product or other application which is the same as or similar to the services, products or other applications offered or in the process of being developed by the Company within the last year prior to termination of my employment with the Company.

(Employment Agreement ¶ 8). In this same paragraph, the Employment Agreement provides that the scope of this restriction is worldwide because PLS "is engaged in business throughout the world and that the marketplace for the Company's products and services is worldwide[.]" (*Id.*). Lastly, the Employment Agreement contains a "blue pencil clause" as follows:

> In the event that a court of competent jurisdiction shall determine that one or more of the provisions of Paragraphs 7 or 8 are so broad as to be unenforceable, then such provision shall be deemed to be reduced in scope or length, as the case may be, to the extent required to make such Paragraphs enforceable.

(*Id.*). Mr. Herberger's employment with PLS concluded on January 19, 2018. (Compl. ¶ 16). Herberger and PLS entered into a confidential "separation agreement" whereby Herberger

reaffirmed and acknowledged his obligations in the Employment Agreement in exchange for a severance payment and continuation of group health insurance benefits. (*Id.* ¶ 17).

Herberger was hired by LaserShip as its Chief Technology Officer in or about October, 2018. (Compl. ¶ 20). His duties in this position include supervision of the IT department and developing and implementing new technologies, products, and services. (*Id.* ¶ 22). LaserShip was aware of Mr. Herberger's prior employment with PLS when LaserShip hired him. (*Id.* ¶¶ 23–24).

### b. Related Litigation

PLS is currently embroiled in a separate litigation in Pennsylvania state court in the Court of Common Pleas of Beaver County involving three of its former employees and the same non-competition provision at issue here. *Pittsburgh Logistics Sys., Inc. v. Ceravolo*, No. 11542-2016 (Pa. Ct. Com. Pl. 2016). PLS sought a preliminary injunction in that case and the trial court denied the preliminary injunction in a detailed opinion following a three-day hearing. *Pittsburgh Logistics Sys., Inc. v. Ceravolo*, No. 135 WDA 2017, 2017 WL 5451759, at \*3 (Pa. Super. Ct. Nov. 14, 2017). The trial court determined that the worldwide non-competition clause was geographically overbroad and unenforceable. *Id.*

PLS appealed the denial of the preliminary injunction to the Superior Court of Pennsylvania, and the Superior Court affirmed the trial court's order because the trial court "provided apparently reasonable grounds" for concluding that the plaintiffs would ultimately prevail on the merits. *Ceravolo*, 2017 WL 5451759 at \*7. The Superior Court "agree[d]" with the trial court's determination that the worldwide scope of the non-competition provision was "gratuitously overbroad." *Id.* at \*5–\*6. The Superior Court also agreed with the trial court's decision to exercise its equitable powers and decline to amend the contractual terms and instead

render the terms void. *Id.* PLS petitioned for review in the Supreme Court of Pennsylvania, and this petition was denied on April 3, 2018. *See* Order, *Pittsburgh Logistics Sys., Inc. v. Ceravolo*, No. 453 WAL 2017 (Pa. Apr. 3, 2018).

With the case back in the Court of Common Pleas of Beaver County,[1] the defendants in the *Ceravolo* case filed preliminary objections to the complaint and moved to dismiss the claims against them on November 15, 2018. *Ceravolo*, No. 11542-2016, Dkt. Nos. 9–10. The trial court heard argument on the fully briefed motion on December 5, 2018, and issued its opinion on January 8, 2019. (Memorandum Opinion, *Pittsburgh Logistics Sys., Inc. v. Ceravolo*, No. 11542-2016 (Pa. Ct. Com. Pl. Jan. 8, 2019) ("State MTD Op."), ECF No. 25-1). In reviewing the procedural history of the case, the trial court concluded that "[i]t is clear from a reading of Judge Kunselman's December 22, 2016 Opinion and Order" of the Beaver County Court of Common Pleas "that she found that the non-competition clauses were legally unenforceable and also clear that the Superior Court agreed and affirmed that decision." (*Id.* at 5). The *Ceravolo* trial court considered itself bound by these prior decisions in the case and concluded that the non-competition provisions were unenforceable as a matter of law. (*Id.* at 7–8). The court then granted the defendants' motion to dismiss as to the breach of contract claims based on a violation of the non-competition clauses. (*Id.* at 8). PLS moved for reconsideration of the trial court's order dismissing its complaint, and the trial court denied that request on February 26, 2019. (*Memorandum Opinion*, No. 11542-2016 (Pa. Ct. Com. Pl. Feb. 26, 2019) ("Reconsideration Op."), ECF No. 38).

---

[1] The Honorable Deborah Kunselman presided over the trial court proceedings in *Ceravolo* during the preliminary injunction stage. The case was reassigned to the Honorable James Ross following Judge Kunselman joining the Pennsylvania Superior Court. (State MTD Op. at 2).

## II.    STANDARD OF REVIEW

A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court conducts a two-part analysis and first separates the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court "may disregard any legal conclusions," *id.*, and then must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233. However, the Court need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a "probability requirement," but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III.    ANALYSIS

### a.  Count I – Injunction

In Count I, PLS seeks an injunction prohibiting LaserShip and Mr. Herberger from continuing to breach the non-competition provisions in the Employment Agreement and from using, disclosing, or transmitting PLS's confidential information or trade secrets. (Compl. ¶ 34). LaserShip correctly points out that an injunction is a form of relief, not a standalone cause of action. *See Rooney v. City of Phila.*, 623 F. Supp. 2d 644, 647 n.2 (E.D. Pa. 2009). Indeed, in Count I, the basis of PLS's request for injunctive relief arises from alleged breaches of the

Employment and Separation Agreements and from alleged misappropriation of PLS's trade secrets. These causes of action are separately pled in Counts II–IV of the Complaint. Count I will therefore be DISMISSED WITHOUT PREJUDICE and with leave to amend the remaining counts to request injunctive relief related to the alleged misappropriation of trade secrets.

However, Count I will be DISMISSED WITH PREJUDICE with respect to the injunctive relief sought for ongoing breaches of the non-competition provision in the Employment and Separation Agreements. (Compl. ¶ 34(a)). This provision provides that it is in effect during an employee's employment with PLS and for one year thereafter. (Employment Agreement ¶ 8). Mr. Herberger's employment with PLS ended on January 19, 2018, and the Complaint itself alleges that he is "prohibited from becoming employed by a competitor, such as LaserShip, until January 19, 2019." (Compl. ¶¶ 16, 18). Thus, PLS's request for injunctive relief related to the non-competition provision is moot in light of the contractual non-competition period lapsing. The Court thus concludes that any amendment to the breach of contract claims seeking injunctive relief at this point would be futile, so dismissal with prejudice with respect to this request for injunctive relief is appropriate. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

### b. Count II – Breach of Contract[2]

A cause of action for breach of contract is established by pleading that "there was a contract, the defendant breached it, and plaintiff[] suffered damages from the breach." *McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010). There are sufficient facts pled in the Complaint to establish a breach of the Employment Agreement, (Compl. ¶¶ 37–40), as well as adequate consideration for the contracts, (*id.* ¶ 17), and LaserShip does not contend otherwise. Rather,

---

[2] The Court's jurisdiction is based on the diversity of citizenship of the litigants. *See* 28 U.S.C. § 1332(a). Pennsylvania law provides the substantive law for the state law causes of action in this case, and the parties do not dispute this.

LaserShip argues that the breach of contract claim must be dismissed because the Pennsylvania state courts have already concluded that the non-competition provision in the Employment Agreement is unenforceable as a matter of law, and thus PLS is collaterally estopped from relitigating the issue of the non-competition provision's enforceability.[3] PLS argues that it is not estopped from asserting the non-competition provision in this case because the state court action is not a final judgment on the merits and the issues presented here and in the state courts are not identical.

In determining the preclusive effect of a state court judgment in a diversity action, a federal court looks to the law of the state of adjudication. *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002). In Pennsylvania, collateral estoppel bars relitigation of an issue if:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Skotnicki v. Ins. Dep't*, 175 A.3d 239, 247 (Pa. 2017) (quoting *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005)). The third and fourth elements are not in dispute. PLS was and is a party to the *Ceravolo* action. Though LaserShip is not a party to the *Ceravolo* action, and never has been, this is not an obstacle to the application of collateral estoppel here. Only the party against whom collateral estoppel is being asserted must have been a party to the previous action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329–31 (1979);

---

[3] PLS pleads that "[b]oth the Employment and Separation Agreements are enforceable contracts between PLS and Mr. Herberger." (Compl. ¶ 36). This a legal conclusion and will be disregarded. *Iqbal*, 556 U.S. at 678.

*In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012) ("Modern collateral estoppel doctrine no longer requires mutuality.").

It also cannot be disputed that PLS had a full and fair opportunity to litigate the matter in the state courts. The preliminary injunction was denied after a three-day hearing on the merits of the injunction and briefing by both parties. *Ceravolo*, 2017 WL 5451759 at *3. PLS had an opportunity to appeal this adverse ruling, and did so. *Id.* at *1. Likewise, PLS had the opportunity to fully brief and argue the *Ceravolo* defendants' preliminary objections to the *Ceravolo* complaint prior to the state court issuing its opinion dismissing the claims based on alleged breaches of the non-competition provision. (State MTD Op. at 3). And finally, PLS was able to submit additional authority and argument in its Motion for Reconsideration. (Reconsideration Op. at 1). PLS would have had a similar, if not identical, motivation to litigate the enforceability of the non-competition provision before the Pennsylvania courts, as their claims in the Pennsylvania courts also included allegations of a breach of the non-competition provision of PLS's Employment Agreement and were thus likewise dependent on the enforceability of this provision.

> i. The legal conclusions reached by the Pennsylvania courts are sufficiently firm.

The parties dedicated substantial briefing to the finality or lack thereof of a state court's denial of a preliminary injunction. The Court disagrees with LaserShip's argument that a preliminary injunction is a final judgment on the merits. *Porter v. Chevron Appalachia, LLC*, — A.3d — , 2019 WL 493216, at *5 n.2 (Pa. Super. Ct. Feb. 8, 2019) ("Of course, a preliminary injunction proceeding does not fully and finally adjudicate the parties' rights, and the principles of res judicata and collateral estoppel are inapplicable to any findings made by the court during those proceedings.") (citing *Santoro v. Morse*, 781 A.2d 1220, 1229 (Pa. Super. Ct. 2001)); *see*

*also Appeal of Paxson*, 106 Pa. 429, 437 (1884) ("No rule is better settled than that an interlocutory injunction is provisional and concludes no right.").

In some circumstances, however, findings and conclusions in a preliminary injunction proceeding can be preclusive if they are "sufficiently firm to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. F.E.M.A.*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (citing *Dyndul v. Dyndul*, 620 F.2d 409, 411–12 (3d Cir. 1980)); *see also McTernan v. City of York*, 577 F.3d 521, 530–31 (3d Cir. 2009) ("[F]indings made in preliminary injunction decisions have preclusive effect if the circumstances make it likely that the findings are accurate and reliable.") (internal quotations and alterations omitted). Factors considered in determining whether the findings made in a preliminary injunction proceeding are sufficiently firm include "whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed." *Hawksbill Sea Turtle*, 126 F.3d at 474 n.11 (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). Pennsylvania law is not to the contrary. *See Lane v. Riley*, 2006 WL 2668514, at *3 (W.D. Pa. Sept. 14, 2006) (observing that, under Pennsylvania law, "a "final judgment on the merits" is not an inflexible requirement") (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 75 (Pa. 1974) ("While the general rule for either collateral estoppel or res judicata to apply is that a final and valid judgment must have been entered . . . this rule is not without exception.")).

The Court concludes that the legal conclusions as to the enforceability of the non-competition provision in the Employment Agreement are sufficiently firm so as to have preclusive effect. Every factor outlined in *Hawksbill Sea Turtle* compellingly supports this conclusion. As explained above, PLS was fully heard in the Pennsylvania courts on the issue of whether the non-competition provision is enforceable and took advantage of every opportunity it

had to appeal. *See Ceravolo*, 2017 WL 5451759 at *1 ("PLS claims the trial court erred in, 1) finding the non-competition agreements were overbroad, and 2) in failing to "blue line" the agreements to make them enforceable."). The Superior Court undertook a "thorough review" of both parties' submissions before issuing their decision. *Id.* After the Superior Court affirmed the trial court in full, PLS unsuccessfully petitioned the Supreme Court of Pennsylvania for review. The Court has reviewed the opinions denying PLS's request for a preliminary injunction from the Pennsylvania Court of Common Pleas and Superior Court and finds them to be thorough, well-reasoned, and complete. In the Court's estimation, this procedural history alone would be sufficient to conclude that the legal conclusions reached by the Pennsylvania courts on the relevant issue are "sufficiently firm." But there is more. This conclusion is further bolstered by the Pennsylvania Court of Common Pleas sustaining the *Ceravolo* defendants' preliminary objections to the complaint and dismissing PLS's claims related to alleged breaches of the non-competition provision. (State MTD Op. at 8).

This Court must afford the state trial court's order sustaining the *Ceravolo* defendants' preliminary objections the same preclusive effect that Pennsylvania courts would. *Del. River Port Auth.*, 290 F.3d at 573. Under Pennsylvania law, "[a] judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal." *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996); *accord Osiris Enters. v. Borough of Whitehall*, 398 F. Supp. 2d 400, 410 (W.D. Pa. 2005) (applying *Shaffer*). The issue is thus whether the trial court's dismissal of the breach of the non-competition clause claims was a "final" judgment.[4]

---

[4] PLS concedes in a supplemental brief that this decision is a final judgment on the merits "for purposes of th[at] brief only." (ECF No. 36 at 1 n.1). It is unclear what the scope of PLS's "concession" is, *i.e.*, whether PLS intended to concede the finality of the judgment *arguendo* or whether, in PLS's view, the finality of the judgment is not fairly in dispute. At any rate, the Court concludes that it is prudent to undertake an analysis regarding the finality of the judgment sustaining the preliminary objections. Though, to be clear, a conclusion that the judgment is final is not necessary because the Court concludes that the findings and conclusions during the preliminary injunction stage are

"Pennsylvania law takes a broad view of what constitutes a "final judgment" for purposes of res judicata." *Gen. Acc. Fire & Life Assur. Corp., Ltd. v. Flamini*, 445 A.2d 770, 772 (Pa. Super. Ct. 1982) (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72 (1974)); *see also Am. Music Theater Festival, Inc. v. TD Bank, N.A.*, No. 10-638, 2012 WL 72706, at *5 (E.D. Pa. Jan. 10, 2012) (applying the same principle to a collateral estoppel/issue preclusion defense). Several courts have observed that a Pennsylvania court renders a final judgment when it sustains a party's preliminary objections in the nature of a demurrer and dismisses a complaint, such that the order is final and appealable. *See, e.g.*, *Joell v. N.W. Human Servs.*, No. 13-3549, 2013 WL 5823738, at *4 (E.D. Pa. Oct. 29, 2013); *Richardson v. Folino*, No. 12-87, 2012 WL 6552916, at *6 (W.D. Pa. Dec. 14, 2012); *Coggins v. Carpenter*, 468 F. Supp. 270, 280 (E.D. Pa. 1979). And while that *appears* to be the case here as well, the Court cannot definitively make that conclusion. The trial court's order did not indicate whether the dismissal of the breach of the non-competition provision claims was with or without prejudice, or otherwise indicate whether the order was final and appealable. (State MTD Op. at 10–11). But, the trial court did fully endorse the conclusions of Superior Court (and the prior trial court Judge's opinion) in likewise concluding the non-competition provision was overbroad and unenforceable as a matter of law. (State MTD Op. at 6–8). The trial court then applied this conclusion in dismissing the claims based on a breach of this provision *on the merits*. (*Id.*). So, at minimum, the trial court's order sustaining the *Ceravolo* defendants' preliminary objections lends further support of this Court's conclusion that the uniform legal conclusion reached by the Pennsylvania courts as to the unenforceability of the non-competition provision is sufficiently firm and need not, and indeed should not, be litigated again here.

---

sufficiently firm on their own so as to have preclusive effect, and the rulings and orders sustaining the preliminary objections on the merits of the case only bolster this conclusion.

### ii. The unenforceability of the non-competition provision was essential to the state court judgments.

As summarized and reiterated by the Superior Court, the Pennsylvania trial court's conclusion that the non-competition was "geographically overbroad and accordingly unenforceable" foreclosed any likelihood that PLS would succeed on the merits. *Ceravolo*, 2017 WL 5451759 at \*3, \*7. And, the Superior Court's affirmance was premised on its conclusion that "the original worldwide scope of the covenant" was "facially overbroad." *Id.* at \*7. In the trial court's opinion on the preliminary objections, the trial court dismissed the breach of the non-competition provision claims *because* the non-competition provision was determined to be facially overbroad. (State MTD Op. at 6–8). The trial court went on to explain that it adopted the conclusions of the Pennsylvania Superior Court and the prior opinion of the Court of Common Pleas and concluded that there was no basis in law or fact to depart from these settled rulings in the case. (*Id.*). It is clear that the unenforceability of the non-competition provision of the Employment Agreement was the central, and indeed the sole, reason that the claims were dismissed. (*Id.* at 9) (dismissing the claims after recognizing that "the non-competition clauses are unenforceable as a matter of law"). And if this holding were not clear enough, the trial court reiterated in its Memorandum Order denying PLS' motion for reconsideration that the Judge previously assigned to the case "clearly held that a world-wide non-competition clause, such as the one imposed under the contracts in question, is clearly not enforceable" and "that it is not proper to use equitable powers to modify a non-competition clause of this nature." (Reconsideration Op. at 3). Indeed, the "trial court and appellate court language *could not have been any clearer* not only on the decision on the preliminary injunction, but also *on the merits*." (*Id.* at 4) (emphasis added).

### iii. The issues are identical.

The application of collateral estoppel in this case will thus hinge on whether the issues presented by this case are identical to those in *Ceravolo*. In LaserShip's view, the answer is simple—the same contractual language was applied in *Ceravolo*, the Pennsylvania courts held that it was unenforceable, and that holding controls here. *See Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1238 n.14 (3d Cir. 1995) ("[N]on-mutual collateral estoppel should apply if the question is one of the legal effect of a document identical in all relevant respects to another document whose effect was adjudicated in a prior action.") (internal quotations omitted). It is undisputed that the same contractual language is at issue in this case as in *Ceravolo*.

PLS views the issue differently. Namely, the unenforceability of the non-competition clauses in *Ceravolo* only applied to the employees in *Ceravolo*, and the "issues decided" by the Pennsylvania courts at the preliminary injunction stage were whether the PLS was likely to succeed on the merits so as to be entitled to a preliminary injunction (before the trial court), and whether the trial court erred in "finding the non-competition agreements were overbroad" and "in failing to "blue line" the agreements to make them enforceable" (before the Superior Court). *Ceravolo*, 2017 WL 5451759 at *1.

PLS's primary argument is that there are "vitally altered" controlling facts between the two cases such that the application of collateral estoppel would be inappropriate. *See Scooper Dooper, Inc. v. Krafico Corp.*, 494 F.2d 840, 846 (3d Cir. 1974). Based on unpled representations by counsel,[5] it appears to the Court that Mr. Herberger's responsibilities may

---

[5] PLS represents in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss that Mr. Herberger's duties were international in scope. (ECF No. 13 at 5–6). In particular, PLS alleges that the technologies that Mr. Herberger was responsible for managing and implementing have "global applications" and that as a member of the "Executive Team" Mr. Herberger was "tasked with operating the company worldwide." (*Id.*). None of these facts

have differed from those of the *Ceravolo* defendants. PLS's argument is that even if a worldwide

non-competition provision would have been too broad to apply to the *Ceravolo* defendants, it

may be justified for Mr. Herberger. Admittedly, the Pennsylvania trial court in its preliminary

injunction opinion and the Superior Court of Pennsylvania in affirming that opinion are, at times,

unclear as to whether the worldwide non-competition provision is overbroad *facially* or *as*

*applied* to the *Ceravolo* defendants. On one hand, there are a number of statements that appear to

be explicit holdings that the non-competition clause is unenforceable and overbroad as a matter

of law. *See, e.g., Ceravolo*, 2017 WL 5451759 at \*7 ("We agree with [the trial court's]

assessment. Not only was the original worldwide scope of the covenant *facially* overbroad . . .")

(emphasis added). But on the other hand, the Superior Court extensively quotes and seemingly

adopts portions of the trial court's preliminary injunction opinion analyzing the characteristics of

the individual employees in reaching its conclusion that the worldwide scope of the non-

competition clause was overbroad. *See, e.g., id.* at \*6 ("The trial court found no evidence that

either Hennings' or Pakutz's employment with PLS encompassed worldwide responsibilities.").

But in this Court's estimation, the discussion of the employees' job responsibilities was not

essential to the holdings and conclusions ultimately rendered by the Pennsylvania courts.

Notwithstanding the "highly deferential" standard of review employed by the Superior

Court at the preliminary injunction stage, *see Warehime v. Warehime*, 860 A.2d 41, 46–47 (Pa.

Super. Ct. 2004), the Superior Court made broad, explicit, and unqualified conclusions about the

enforceability of the non-competition provision—including an observation that "the original

worldwide scope of the covenant [is] *facially* overbroad." *Ceravolo*, 2017 WL 5451759 at \*7

---

are alleged in the Complaint, and thus the Court will not consider them at this juncture. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as indisputably authentic documents if the complainant's claims are based upon these documents.").

(emphasis added). This not only suggests but compels the conclusion that the covenant would be unenforceable as to *any* employee. No qualifiers are provided. Indeed, on ruling on the defendants' preliminary objections to the amended complaint, the Court of Common Pleas accepted and applied the Superior Court's legal conclusions at the preliminary injunction stage because "the facts are not at issue and will not change," only "contract provisions are the subject of the controversy," and the Superior Court "reviewed the non-competition clauses of the employment agreements and determined that the clauses were not enforceable *as a matter of law*." (State MTD Op. at 7). This Court agrees, and concludes that PLS is precluded from relitigating the issue of the non-competition clause's enforceability.

However, under Pennsylvania law, a court may exercise its equitable power to reform an overly broad non-competition clause. *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254 (Pa. 1976). The Employment Agreement has a "blue pencil clause" that recognizes this power:

> In the event that a court of competent jurisdiction shall determine that one or more of the provisions of Paragraphs 7 or 8 are so broad as to be unenforceable, then such provision shall be deemed to be reduced in scope or length, as the case may be, to the extent required to make such Paragraphs enforceable.

(Employment Agreement ¶ 8). However, all of the Pennsylvania courts that opined on the *Ceravolo* matter declined to exercise their equitable power to narrow the scope of the clause. *Ceravolo*, 2017 WL 5451759 at \*7; (State MTD Op. at 8). And there is good support for those courts taking that approach. "When a covenant not to compete contains an unlimited geographic scope, although the nature of the business was such that a relevant geographical area could have been specified, the agreement is void, and courts may not use their equitable power to alter the agreement." *Adhesives Research, Inc. v. Newsom*, No. 15-CV-0326, 2015 WL 1638557 (M.D. Pa. Apr. 13, 2015) (citing *Reading Aviation Serv., Inc. v. Bertolet*, 311 A.2d 628 (Pa. 1973)). The

-16-

Pennsylvania Superior Court and Court of Common Pleas have already determined that "the relevant geographic [sic] could have been originally specified." *Ceravolo*, 2017 WL 5451759 at *7 (summarizing and agreeing with the assessment made by the trial court). This Court sees no reason to depart from this firm and clear conclusion, particularly because the Pennsylvania trial court had the benefit of a three-day hearing to reach such a conclusion and the same *business* is involved in this case. And, at any rate, there are no facts pled in the Complaint that would give the Court a basis to conclude that Mr. Herberger was differently situated from the *Ceravolo* defendants such that a relevant geographic restriction could not have been specified for him.

The Court concludes that the issues in this case and the *Ceravolo* case are identical, the issue in both cases was essential to the first judgment, PLS was a party with a full and fair opportunity to litigate the issue in the state courts, and the findings and conclusions were sufficiently firm so as to have preclusive effect. The issue of the non-competition provision's enforceability has generated four opinions from Pennsylvania courts, issued after four rounds of briefing and argument and a three-day hearing on the preliminary injunction. It would be a waste of judicial resources and economy to litigate this same issue in this forum. Thus, Count II will be DISMISSED WITHOUT PREJUDICE with leave to amend, but only in the event of an intervening development in the *Ceravolo* case that would undermine the Pennsylvania courts' current holdings as related to the enforceability of the non-competition provision at issue here.

### c. Counts III and IV– Misappropriation of Trade Secrets

Count III of the Complaint alleges violations of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. C.S. §§ 5301 *et seq.*, and Count IV of the Complaint alleges violations of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.* PLS alleges that Herberger "has or inevitably will disclose PLS' confidential information to LaserShip, including

but not limited to PLS' technology-based trade secrets, such as PLS Pro, GoShip, PLS's mobile applications, and PLSpay." (Compl. ¶ 26). LaserShip asserts that such claims are barred by Pennsylvania's "gist of the action" doctrine because the Employment Agreement likewise prohibits disclosure of PLS's "confidential information and/or trade secrets." (*See id.* ¶ 39).

The Employment Agreement lays out an extensive list of information that is designated as "Confidential Information" that cannot be used, misappropriated, or disclosed. (Employment Agreement ¶ 4). Among the designated categories are "computer programs, source and object codes (whether or not patented, patentable, copyrighted or copyrightable), related software development information, inventions or other confidential or proprietary information belonging to [PLS]." (*Id.*). Accordingly, given the breadth of information this provision applies to, there is no dispute that the identified information in the Complaint—"PLS Pro, GoShip, PLS's mobile applications, and PLSpay"—would fall into one or more of the categories of information designated as "Confidential" in the Employment Agreement. The issues are thus whether Mr. Herberger had a duty independent of the Employment Agreement to keep the identified information confidential, and whether PLS has otherwise adequately pled a cause of action for trade secret misappropriation under the DTSA and/or PUTSA.

Pennsylvania's "gist of the action" doctrine is as follows:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract— then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 256 (3d Cir. 2017) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) (internal citations omitted)). The doctrine operates to "preclude[] plaintiffs from recasting ordinary breach of contract claims into tort claims." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (quoting *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)). But, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract," *Bruno*, 106 A.3d at 69, nor is the nomenclature used in the complaint controlling, *id.* at 68; *see also Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619 (E.D. Pa. 2010) ("The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other."). The critical inquiry is whether the cause of action is premised on "breaches of duties imposed by law as a matter of social policy" rather than for "breaches of duties imposed by mutual consensus agreements between particular individuals." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007) (internal quotations omitted). In other words, would Mr. Herberger have a legal duty to not disclose the information identified in the Complaint even if the confidentiality provisions in the Employment Agreement did not exist?

The Court has little difficulty concluding that the "gist of the action" doctrine does not operate to bar the trade secrets misappropriation claims here. Mr. Herberger has a duty under the DTSA and PUTSA to refrain from misappropriating the trade secrets of his former employer. Both the DTSA and PUTSA create private rights of actions that are enforceable in the absence of a mutual consensus between contracting parties. *See* 18 U.S.C. § 1836(b)(1); 12 Pa. C.S. § 5303(a); *see also PharMerica Corp. v. Sturgeon*, No. 16-1481, 2018 WL 1367339, at *4 (W.D.

Pa. Mar. 16, 2018). These claims can be pursued concurrently with a breach of contract claim covering the same information. *See Brown & Brown*, 745 F. Supp. 2d at 624 (citing *FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, No. 03-1512, 2008 WL 4279751, at \*12 (W.D. Pa. Sept. 12, 2008)).

However, the misappropriation claims must nonetheless satisfy the pleading requirements of *Twombly* and *Iqbal*.[6] The "threshold" inquiry of a trade secret misappropriation claim (whether brought under the DTSA or PUTSA) is whether the information alleged to have been misappropriated is subject to trade secret protection. *See Fishkin v. Susquehanna Partners, G.P.*, 340 F. App'x 110, 118–19 (3d Cir. 2009) (internal citations omitted). As recently summarized by another member of this Court:

> Although the DTSA and the PUTSA use different wording to define a trade secret, they essentially protect the same type of information. Both define a trade secret as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use.

*PharMerica Corp.*, 2018 WL 1367339 at \*4 (citing 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302; *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659 (E.D. Pa. 2018)). Though "a complaint need only identify the alleged trade secret in a general sense," *see Prominence Advisors, Inc. v. Dalton*, No. 17 C 4369, 2017 WL 6988661, at \*3 (N.D. Ill. Dec. 18, 2017), more than "threadbare recitals of elements of a cause of action" are necessary to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

PLS identifies the information allegedly subject to trade secret protection as "PLS' technology-based programs, including but not limited to PLS Pro, GoShip, PLS' mobile

---

[6] This issue was raised and argued during Oral Argument (ECF No. 32) and is therefore properly before the Court.

applications, and PLSpay" and asserts that these "constitute trade secrets." (Compl. ¶ 43). The assertion that these items "constitute trade secrets" is a legal conclusion that the Court need not assume is true. *Fowler*, 578 F.3d at 210–11. The Complaint also states that the foregoing information "is not generally known to, and not readily ascertainable by proper means by, other people who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Compl. ¶ 44). These statements are wholly conclusory (and indeed seem to be almost verbatim recitations of the definitions for a trade secret as quoted above), and for these reasons the Court concludes that they are insufficient to adequately plead a cause of action under PUTSA or DTSA.

PLS does, however, plead that Herberger had access to the identified information "[a]s a result of his employment," (Compl. ¶ 15), and further pled that Herberger was "prohibited from disclosing any of PLS' confidential information or trade secrets" pursuant to the Employment and Separation Agreements, (*id.* ¶ 19). By the slimmest of margins, this is sufficient factual detail from which, if true, a jury could conclude that Mr. Herberger had access to the information and that the information was not readily known and was subject to reasonable protections. *See Certainteed Ceilings Corp. v. Aiken*, 2015 WL 410029, at *5 (E.D. Pa. Jan. 29, 2015) (concluding that an employer's pleading that stated that the employer "protect[ed] . . . information with noncompete covenants and employment agreements" was sufficient to establish at the motion to dismiss stage that the information was protected as a trade secret).

However, there is not sufficient factual detail in the Complaint regarding LaserShip's alleged misappropriation of any PLS trade secrets. The only details regarding any alleged misappropriation is that "PLS believes and therefore avers that Mr. Herberger has or will use such information for LaserShip's benefit in competition with PLS." (Compl. ¶ 45). This

statement cannot support a conclusion that any trade secrets were or will be misappropriated, even if PLS's *belief* were taken as true. Additional facts must be pled tending to prove that Herberger has or will actually improperly use PLS's trade secrets in connection with his employment with LaserShip. *See Prominence Advisors*, 2017 WL 6988661 at *5 (dismissing DTSA claim because the complaint did "not include any facts to support [plaintiff's] bald allegation that [defendant] disclosed the Confidential Information [sic] without authorization or consent"); *see also Bioquell, Inc. v. Feinstein*, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010) (holding that the allegation that "[b]ased on Defendant['s] conduct to date, it is probable that Defendant [] will continue to use Plaintiff's trade secrets for his own benefit and . . . to the detriment of Plaintiff" was insufficient to plead a claim for misappropriation under PUTSA).

The only factual allegations in the Complaint that could arguably support a conclusion that Mr. Herberger will disclose or has disclosed any trade secrets relate to the alleged similarity between Mr. Herberger's prior position at PLS and his new position at LaserShip. (Compl. ¶¶ 21–22). The Third Circuit has observed that "Pennsylvania law permits the issuance of an injunction where a defendant's new employment "is *likely* to result in the disclosure" of a former employer's trade secrets." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 111–12 (3d Cir. 2010) (quoting *Air Prods. & Chems., Inc. v. Johnson*, 442 A.2d 1114, 1120 (Pa. Super. Ct. 1982)). This applies under the DTSA as well. *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017) (concluding that a district court did not abuse its discretion in granting a preliminary injunction in a trade secrets misappropriation claim where an employee's position with a competitor was in the "same role, same industry, and same geographic region"). "District courts have also found that where a plaintiff alleges the defendant has taken a job with "identical and/or nearly identical job responsibilities" with a direct competitor in substantially the same

profession, and that defendant has used the plaintiff's trade secrets in the performance of his or her duties, a plaintiff has stated a claim for misappropriation of trade secrets." *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434, 446 n.52 (E.D. Pa. 2018) (quoting *Certainteed Ceilings*, 2015 WL 410029 at *5).

But here, all PLS has alleged is that Mr. Herberger's two positions are "substantially similar" and that both involve "developing and implementing new technologies, products and services." (Compl. ¶¶ 21–22). There are insufficient facts to draw the conclusion that Mr. Herberger has or will use any of the confidential items identified by PLS in his new position. This is unlike *Fres-co Systems*, where the trade secret information was "customer lists, price lists, and marketing and sales strategies" and the employee was set to begin as a sales representative (the same role he held at his former company) at a competing company. 690 F. App'x at 75–76. The connection between this *type* of information and the likelihood of misappropriation is apparent and direct—proprietary customer lists and other sales information would clearly be helpful in a sales position to secure a competitive advantage, and relatedly, the improper use of those items would be detrimental to a competing company that would otherwise utilize that information. But, the factual connection here, based on what is currently in the Complaint, is not apparent. First, it is unclear from this Complaint whether PLS and LaserShip are, in fact, competitors or are even in the same industry, or if LaserShip would even have a use for the confidential information identified in the Complaint. Second, there are insufficient facts pled about Mr. Herberger's new position (or his prior one) that would lead to a plausible inference as to how or why Mr. Herberger would likely use the identified confidential information at LaserShip, or how or why such information would be germane to Mr. Herberger's role at LaserShip. Accordingly, based on the facts currently pled in the Complaint, there is

-23-

insufficient factual detail from which it could be concluded that Mr. Herberger has or will improperly use or disclose PLS's trade secrets in his position at LaserShip.

Because there are insufficient facts alleged in the Complaint to support the contention that Mr. Herberger has misappropriated or will misappropriate PLS's trade secrets, Counts III and IV will be DISMISSED WITHOUT PREJUDICE and with leave to amend the Complaint to supplement Counts III and IV with additional and appropriate factual detail.

### d. Count V – Tortious Interference

Under Pennsylvania law, one "who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." *Creditron Fin. Servs. v. K2 Fin., LLC*, No. 06-293, 2008 U.S. Dist. LEXIS 39155, at *10–*11 (W.D. Pa. May 14, 2008) (quoting *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978) (quoting Restatement (Second) of Torts § 766). Because the Court concludes that the relevant contractual provision in this case is not enforceable, this Count will be DISMISSED WITHOUT PREJUDICE, subject to amend only on the terms as stated relative to the breach of contract claims discussed above. *See Manning v. Flannery*, 2012 WL 1111188, at *23–*24 (W.D. Pa. Mar. 31, 2012) (listing "the existence of a contractual relationship between the complainant and a third party" as the first element of the tort) (citing *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 665 (Pa. Super. Ct. 2010)).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 9) will be GRANTED. All Counts of the Complaint (ECF No. 1) will be DISMISSED WITHOUT PREJUDICE, with the exception of the injunctive relief sought in relation to the alleged breach of the Employment and Separation Agreements, which will be DISMISSED WITH PREJUDICE. PLS will be granted leave to amend the Complaint.

An appropriate Order will issue.

Mark R. Hornak
Chief United States District Judge

Dated:        June 12, 2019

cc:            All counsel of record